**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| **RONALD LYNN LIPSCOMB and** | * | |
| **AMY MICHELLE LIPSCOMB** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | **CIVIL ACTION** |
| **vs.** | * | **FILE NO. _____** |
| | * | |
| **MATTHEW TUCKER DODSON,** | * | |
| | * | **COMPLAINT FOR DAMAGES** |
| **BERRY C. DODSON, and** | * | |
| | * | **JURY TRIAL DEMANDED** |
| **JAMES A. HAMMETT** | * | |
| | * | |
| **Defendants.** | * | |

## COMPLAINT

Plaintiffs RONALD LYNN LIPSCOMB and AMY MICHELLE LIPSCOMB bring this Complaint for Damages against Defendants MATTHEW TUCKER DODSON, BERRY C. DODSON, and JAMES A. HAMMETT, showing the Court the following:

## PART I
## PARTIES, JURISDICTION, AND VENUE

1.

Ronald Lynn Lipscomb and Amy Michelle Lipscomb are a married couple residing in Madison, Florida.

2.

Matthew Tucker Dodson, a Defendant named in this action, is an individual domiciled at 3807 Highway 111 South, Cairo, Georgia 39828. Matthew Tucker Dodson may be served with a summons and a copy of this Complaint at that address pursuant to Rule 4 of the Federal Rules of Civil Procedure.

3.

Because Matthew Tucker Dodson is domiciled in the State of Georgia, he is subject to the personal jurisdiction of this Court.

4.

Berry C. Dodson, a Defendant named in this action, is an individual domiciled at 3807 Highway 111 South, Cairo, Georgia 39828. Berry C. Dodson may be served with a summons and a copy of this Complaint at that address pursuant to Rule 4 of the Federal Rules of Civil Procedure.

5.

Because Berry C. Dodson is domiciled in the State of Georgia, he is subject to the personal jurisdiction of this Court.

6.

James A. Hammett, a Defendant named in this action, is an individual domiciled at 4021 Georgia Highway 111 South, Cairo, Georgia 39828. James A. Hammett may be served with a summons and a copy of this Complaint at that address pursuant to Rule 4 of the Federal Rules of Civil Procedure.

7.

Because James A. Hammett is domiciled in the State of Georgia, he is subject to the personal jurisdiction of this Court.

8.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00 and because it is between citizens of different states.

9.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in Grady County, Georgia, which is situated within the district and divisional boundaries of the Albany Division of the Middle District of Georgia, and because one or more of the Defendants is domiciled within this District and Division.

## PART II
## FACTUAL ALLEGATIONS

### GUNSHOT WOUND TO RONALD LYNN LIPSCOMB

10.

Plaintiff Ronald Lipscomb works as a delivery driver for FedEx Freight Corporation ("FedEx").

11.

In his capacity as a FedEx delivery driver, Mr. Lipscomb drives a Volvo semi-trailer truck (the "Truck")

12.

On December 20, 2017 (the "Incident Date"), shortly before 6 p.m., Mr. Lipscomb was driving the Truck on Georgia Highway 111 in Grady County, Georgia (the "Road"). He was traveling north from Havana, Florida, toward the City of Cairo.

13.

Suddenly and without warning, in the proximity of mile marker 7 (the "Incident Location"), Mr. Lipscomb heard a deafening noise inside the cab of the Truck.

14.

In the same instance that he heard the noise, Mr. Lipscomb felt a terrible, searing pain in

his foot.

### 15.

Because there was insufficient room on the shoulder of the Road to safely park the Truck, Mr. Lipscomb could not immediately stop to assess the extent of his injuries and determine what had happened. Instead, he had to continue driving for several minutes until he reached an area with enough width on the shoulder to safely pull the Truck over.

### 16.

After parking, Mr. Lipscomb examined his foot and saw that it was bleeding profusely from both the top and the bottom, with sizeable wounds in both places.

### 17.

Based on the appearance of the wounds to his foot, Mr. Lipscomb was able to surmise that he had been shot.

### 18.

It was later confirmed that a bullet had passed through his foot, leaving an entry wound on top of his foot and an exit wound on the side of his foot.

### 19.

Prior to striking him, the bullet had passed through the passenger door of the Truck at a height of 56.5 inches from the ground.

### 20.

The bullet then passed through the center console of the truck and through Mr. Lipscomb's foot, ultimately lodging in the driver's side door of the Truck.

<u>ACTIONS OF MATTHEW TUCKER DODSON</u>

21.

On the Incident Date, Matthew Tucker Dodson, who was 17 years old, was hunting from a twelve-foot-tall, metal deer stand (the "<u>Deer Stand</u>") on tax parcel 00270045002 (the "<u>Property</u>"). The Deer Stand was a ladder-style stand that had been attached to the trunk of a tree.

22.

Matthew Tucker Dodson was hunting for deer with a .270 caliber Ruger rifle.

23.

The Property is located alongside the Road, directly to the south, and it has frontage directly adjacent to the Incident Location.

24.

On the Incident Date, the Deer Stand was located on the edge of a large field within the Property (the "<u>Field</u>").

25.

The Field is approximately 25 acres in size. Prior to the subject incident, it had been cut and harrowed so that there was nothing but open space between the Deer Stand and the Road.

26.

The Deer Stand was placed in that location for the specific purpose of attracting deer to the Field and shooting them out in the open.

27.

The Field is bordered on its western side by a dense forest.

28.

Because of the hardwood forest to the west of the Field, a person sitting in the Deer Stand at the time of the incident would have been completely unable to see or anticipate the arrival of vehicles traveling northeast on the Road. Those vehicles would not have been visible to someone sitting in the Deer Stand until the vehicle had passed by the hardwood forest and was directly parallel to the Field.

29.

The Road is heavily trafficked by the general public, and a person hunting near the Road should know and expect that, whether it is visible or not, vehicular traffic could be present at any time.

30.

Because a hunter sitting in the Deer Stand cannot know whether a car or truck is coming, it is patently dangerous for a person to fire a rifle in the direction of the roadway from the location of the Deer Stand.

31.

The Deer Stand was positioned on the Property approximately 442 yards from Georgia Highway 111.

32.

A cartridge fired from a .270 caliber rifle can travel distances well in excess of 1,000 yards.

33.

Because of its proximity to the Road and the inability to determine when vehicles were approaching from the southwest, there was no way for someone sitting in the Deer Stand to

safely fire a rifle in the direction of the Road.

34.

On the Incident Date, just before 6 p.m., Defendant Matthew Tucker Dodson fired his Ruger .270 caliber rifle in the direction of the Road. He did so at the same time that Mr. Lipscomb's Truck was emerging from behind the hardwood forest.

35.

The bullet fired by Defendant Matthew Tucker Dodson passed through the passenger side door of the Truck, hitting Mr. Lipscomb's right foot.

36.

On the Incident Date, Matthew Tucker Dodson was hunting without a valid hunting license.

37.

Matthew Tucker Dodson fired the bullet that struck Mr. Lipscomb after the legal time of sunset on the Incident Date.

38.

As a direct and proximate result of the gunshot wound inflicted on him by Defendant Matthew Tucker Dodson, Mr. Lipscomb has incurred medical expenses in excess of $10,000.00 for treatment of his injuries.

39.

Mr. Lipscomb continues to have pain and physical limitations as a result of his injuries, and he continues to have shrapnel throughout his right foot from the bullet that struck him.

40.

As a direct and proximate result of the gunshot wound inflicted on him by Defendant

Matthew Tucker Dodson, Mr. Lipscomb will incur future medical expenses for treatment of his injuries.

## RESPONSIBILITY OF BERRY C. DODSON

41.

On the Incident Date, Matthew Tucker Dodson was a minor, and he lived with his father, Defendant Berry C. Dodson, in Grady County, Georgia.

42.

Upon information and belief, Defendant Berry C. Dodson was the custodial parent and natural guardian of Matthew Dodson on the Incident Date.

43.

Upon information and belief, Defendant Berry C. Dodson furnished Matthew Dodson with his hunting rifle and his means of transportation to the Property.

44.

Upon information and belief, Defendant Berry C. Dodson knew that Matthew Dodson was hunting from the Deer Stand on the Incident Date and gave him permission to do so.

45.

Upon information and belief, Defendant Berry C. Dodson knew where the Deer Stand was located and positioned, and he knew or should have know that the location and positioning of the Deer Stand posed an unacceptable risk to persons using the Road.

## RESPONSIBILITY OF JAMES A. HAMMETT

46.

Defendant James A. Hammett is the owner of the Property.

47.

Defendant James A. Hammett owns multiple pieces of property on the Road, and, upon information and belief, he lives on the Road, approximately 2 miles from the Incident Location.

48.

Upon information and belief, Defendant James A. Hammett knew where the Deer Stand was located and positioned, and he knew or should have known that the location and positioning of the Deer Stand posed an unacceptable risk to persons using the Road.

49.

Despite knowing of the unsafe location and positioning of the Deer Stand, Defendant Hammett did not remove or relocate the Deer Stand.

50.

Despite knowing of the unsafe location and positioning of the Deer Stand, Defendant Hammett permitted other persons to hunt from that location on his property.

51.

Upon information and belief, Defendant James A. Hammett knew that Matthew Dodson was hunting from the Deer Stand on the Incident Date and gave him permission to do so.

**PART III**
**CLAIMS FOR RELIEF**

**COUNT ONE – NEGLIGENCE OF MATTHEW TUCKER DODSON**

52.

Plaintiff incorporates all allegations of this Complaint into this Count One as though such allegations were fully set forth herein.

53.

Defendant Matthew Tucker Dodson had an affirmative duty not to fire a rifle toward a

public road or right-of-way open to public travel.

54.

Defendant Matthew Tucker Dodson had an affirmative duty not fire a rifle across a road unless  his line of fire was high enough to preclude any danger to persons using that road.

55.

Defendant Matthew Tucker Dodson had an affirmative duty not to fire his rifle in a direction where his view was obstructed and where he could not determine if persons were approaching from beyond his target.

56.

Defendant Matthew Tucker Dodson had a duty when handling a firearm to exercise reasonable caution and ordinary care and to avoid taking any action that endangered other people.

57.

Defendant Matthew Tucker Dodson breached duties owed to Plaintiff Ronald Lipscomb when he fired a rifle from the Deer Stand in the direction of the Road.

58.

Defendant Matthew Tucker Dodson knew, or should have known, that a bullet fired from the Deer Stand in the direction of the Road had the capacity to hurt, maim, or kill a person traveling on the Road.

59.

Defendant Matthew Tucker Dodson knew, or should have known, that his view of oncoming traffic on the Road was obstructed by the forest located to the south of the Field.

60.

Defendant Matthew Tucker Dodson did not act reasonably and did not take ordinary care when he fired his rifle in the direction of the Road.

61.

As a direct and proximate result of the negligence of Defendant Matthew Tucker Dodson, Ronald Lipscomb suffered a gunshot wound to his right foot.

62.

Defendant Matthew Tucker Dodson is liable to Ronald Lipscomb for past, present, and future compensatory damages in such amount as may be shown by the evidence and as may be determined by the enlightened conscience of a jury at the trial of this case.

63.

Defendant Matthew Tucker Dodson is liable to Ronald Lipscomb for his past and future medical care and related expenses in such amount as may be shown by the evidence and proven at the trial of this case.

## COUNT TWO – NEGLIGENT ENTRUSTMENT AND NEGLIGENT SUPERVISION LIABILITY OF DEFENDANT BERRY C. DODSON

64.

Plaintiff incorporates all allegations of this Complaint into this Count Two as though such allegations were fully set forth herein.

65.

At the time of the collision, Defendant Matthew Dodson was hunting with a Ruger .270 caliber rifle that, upon information and belief, his father, Defendant Berry C. Dodson, had furnished to him.

-11-

66.

Upon information and belief, at the time of the subject incident, Defendant Matthew Dodson was hunting on the Property with the permission of his father, Defendant Berry C. Dodson.

67.

Upon information and belief, Defendant Berry C. Dodson was aware of the location and positioning of the Deer Stand on the Property prior to allowing his son to hunt from that location.

68.

Upon information and belief, Defendant Berry C. Dodson permitted Defendant Matthew Tucker Dodson to hunt from the Deer Stand at his pleasure and convenience.

69.

Upon information and belief, at the time of the subject incident, Defendant Berry C. Dodson was the natural guardian and custodial parent of Defendant Matthew Tucker Dodson, and they resided in the same household.

70.

At the time of the subject incident, Defendant Berry C. Dodson had negligently entrusted the Ruger .270 rifle to Defendant Matthew Tucker Dodson.

71.

At the time of the subject incident, Defendant Berry C. Dodson was negligent in his supervision of Defendant Matthew Tucker Dodson, to wit: he permitted him to hunt from a deer stand that had been positioned in an unsafe location, and he did not adequately instruct him on the dangers of firing toward the Road.

72.

Upon information and belief, at all times material to this action, Defendant Berry C. Dodson had the right to disallow Defendant Matthew Tucker Dodson from hunting from the Deer Stand.

73.

Defendant Berry C. Dodson's negligence constituted a proximate cause of the injuries to Ronald Lipscomb.

74.

Defendant Berry C. Dodson is liable to Plaintiffs under both negligent entrustment and negligent supervision theories of liability.

75.

Defendant Berry C. Dodson is liable to Ronald Lipscomb for past, present, and future compensatory damages in such amount as may be shown by the evidence and as may be determined by the enlightened conscience of a jury at the trial of this case.

76.

Defendant Berry C. Dodson is liable to Ronald Lipscomb for his past and future medical care and related expenses in such amount as may be shown by the evidence and proven at the trial of this case.

**COUNT THREE – NEGLIGENCE OF JAMES A. HAMMETT**

77.

Plaintiff incorporates all allegations of this Complaint into this Count Three as though such allegations were fully set forth herein.

78.

Defendant James A. Hammett had an affirmative duty not to permit unsafe hunting to occur on the Property.

79.

Defendant James A. Hammett had an affirmative duty not to position (or allow others to position) a deer stand on the Property in a place that threatened the safety of those traveling on the Road.

80.

Defendant James A. Hammett breached his duty to Plaintiff Ronald Lipscomb, as well as his duty to members of the general public, by placing or allowing another person to place, the Deer Stand in a position that posed a risk to persons traveling on the Road.

81.

Defendant James A. Hammett knew, or should have known, that the Deer Stand was positioned in an unsafe place that posed a risk to persons traveling on the Road.

82.

Defendant James A. Hammett did not act reasonably in permitting Matthew Tucker Dodson, a 17 year old boy, to hunt from the Deer Stand.

83.

Defendant James A. Hammett is liable to Ronald Lipscomb for past, present, and future compensatory damages in such amount as may be shown by the evidence and as may be determined by the enlightened conscience of a jury at the trial of this case.

84.

Defendant James A. Hammett is liable to Ronald Lipscomb for his past and future

medical care and related expenses in such amount as may be shown by the evidence and proven at the trial of this case.

## <u>COUNT FOUR – LOSS OF CONSORTIUM</u>

85.

Plaintiff incorporates all allegations of this Complaint into this Count Three as though such allegations were fully set forth herein.

86.

Amy Lipscomb is the wife of Ronald Lynn Lipscomb.

87.

Amy Lipscomb is entitled to the services of her husband and the love, society, companionship, and comfort of her husband.

88.

As a direct and proximate result of the negligence of the Defendants, the ability of Ronald Lipscomb to render services to his wife and to provide love, society, companionship, and comfort to his wife was significantly impaired.

89.

As a direct and proximate result of the negligence of Defendants, Amy Lipscomb has been damaged for the loss of consortium and diminution of services of her husband, Ronald Lynn Lipscomb, and she is entitled to recover from Defendants for said loss in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray as follows:

(a)     That process issue and service be had on Defendants;

(b)     That a jury trial be had on all issues so triable;

(c)    That judgment be granted in favor of Plaintiff Ronald Lynn Lipscomb and against Defendants, for his personal injuries, including for his past, present, and future pain and suffering, in such an amount as shall be shown by the evidence and proven at trial;

(d)    That judgment be granted in favor of Plaintiff Ronald Lynn Lipscomb and against Defendants as payment for his past medical expenses in such an amount as shall be shown by the evidence and proven at trial;

(e)    That judgment be granted in favor of Plaintiff Ronald Lynn Lipscomb and against Defendants as payment for his future medical expenses in such an amount as shall be shown by the evidence and proven at trial;

(f)    That judgment be granted in favor of the Plaintiff Ronald Lynn Lipscomb and against Defendants as payment for other expenses incurred by him as a result of Defendants' negligence in such an amount as shall be shown by the evidence and proven at trial;

(g)    That judgment be granted in favor of the Plaintiff Amy Michelle Lipscomb and against Defendants as payment for the loss of consortium and diminution of services of her husband, Ronald Lynn Lipscomb, in such an amount as shall be shown by the evidence and proven at trial;

(h)    That Plaintiffs recover the cost of this action; and

(i)    For such other and further relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED, this 22nd day of August, 2019.

**LANGDALE VALLOTTON, LLP**

*/s/ James R. Miller*
JAMES R. MILLER
Georgia Bar No. 159080
AMY P. HOLBROOK
Georgia Bar No. 149991
Attorneys for Plaintiffs

1007 North Patterson Street
Post Office Box 1547
Valdosta, Georgia 31603-1547
(229) 244-5400

**L. WARREN TURNER, JR, P.C.**

*/s/ L. Warren Turner, Jr.*
L. WARREN TURNER, JR.
Georgia Bar No. 719491
Attorney for Plaintiffs

P.O. Box 157
Valdosta, GA 31603
(229) 247-5005